```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```

| | |
|---|---|
| **Vervita Stiger,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )    No. 11-2794 |
| | ) |
| **Cheyenne Johnson, Shelby** | ) |
| **County Government, and** | ) |
| **Shelby County Tax Assessor,** | ) |
| | ) |
|     **Defendants.** | ) |
| | ) |
| | ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Before the Court is the September 3, 2013 Motion for Summary Judgment (the "Motion") by Defendants Cheyenne Johnson ("Johnson"), Shelby County Government ("Shelby County"), and Shelby County Tax Assessor (collectively, "Defendants"). (Mot., ECF No. 55.) On September 5, 2013, Defendants filed their accompanying Memorandum of Law and Statement of Undisputed Material Facts. (ECF No. 59.) Plaintiff Vervita Stiger ("Stiger") responded on November 11, 2013. (Resp., ECF No. 69.) Defendants replied on November 25, 2013. (Reply, ECF No. 71.) For the following reasons, the Motion is GRANTED.

**I.    Background**

Stiger is a former employee of Shelby County Government ("Shelby County"). (Def. SUMF, ECF No. 59 ¶ 1.) Johnson is the elected Shelby County Assessor of Property. (Id. ¶ 2.) She replaced Rita Clark as Assessor effective September 1, 2008. Stiger brings this action under 42 U.S.C. § 1983, alleging that Johnson denied Stiger procedural due process and retaliated against her by stripping her of duties and denying her a job reclassification after Stiger campaigned for Johnson's opponent in the Shelby County Assessor election. (Compl., ECF No. 1-1 ¶ 35.)

During her years working for Shelby County, Stiger progressed to the positions of Abstractor, Abstractor/Administrative Technician, and Administrative Technician. (Def. SUMF ¶ 5.) In 2008, Shelby County retained an independent contractor, Fox Lawson & Associates LLC ("Fox"), to conduct a salary and job classification review of all the positions in the Shelby County Assessor's office. (Id. ¶ 6.) Employees were asked to prepare a written Position Description Questionnaire ("PDQ") identifying their job duties and responsibilities. (Id.) Stiger participated, preparing a written description of her job duties and responsibilities as an Administrative Technician. (Id.) Fox concluded that the duties Stiger was performing were in line with her classification as an Administrative Technician. (Id. ¶ 9.)

2

At some point, Stiger was assigned to work under the supervision of Margaret Culver, the manager of the Information Technology ("IT") Department. (Id. ¶ 10.) Under Culver's supervision, Stiger was assigned several different duties and responsibilities, including running queries and supervising and training employees in the Pictometry Group. (Id. ¶ 11.) Stiger's responsibilities with the Pictometry Group ended when a project concluded in 2008. (Stiger Dep., ECF No. 59-1 at 27.) Effective September 12, 2008, Stiger was transferred from the IT Department to the Residential Reappraisal Department to assist Chuck Blow. (Def. SUMF ¶ 14.)

Under Chuck Blow's supervision, Stiger was responsible for mileage, attendance, leave forms, coordinating use of the conference room, and running queries when asked. (Id. ¶ 19.) The term "query" describes a search for information in a database. (Id. ¶ 17.) When a query involves several different databases, it becomes more complex and requires a higher level of expertise. (Id.) Stiger's Performance Evaluation for the period from July 1, 2008 to June 30, 2009, states that she "construct[ed] simple queries." (Id. ¶ 16.) Stiger's job duties did not change while she was under Blow's supervision. (Stiger Dep., ECF No. 59-1 at 33.)

In 2008, Johnson and Bill Giannini were seeking election to the Assessor's office. (Def. SUMF ¶ 23.) Stiger campaigned for

Giannini. (Id. ¶ 25.) Stiger remembered an incident in which Johnson saw Stiger campaigning for Giannini. (Stiger Dep, ECF No. 59-1 at 47.) During a joint campaign event on July 15, 2008, a coworker of Stiger's submitted an anonymous question to Johnson, read by the moderator, asking: "Ms. Johnson, how are you going to handle the lawsuits that have been filed against the office?" (Palmer Dep., ECF No. 59-1 at 12.) Johnson responded, "I will deal with them and there will be some changes made." (Plaint. SUMF, ECF No. 69 ¶ 28.) According to Stiger, Johnson made that statement while looking in the direction of a group of Giannini supporters, including Stiger, with body language and tone that Stiger thought were notable. (Stiger Dep., ECF No. 47.)

In February 2010, Shelby County announced an open Administrative Aide position in the Assessor's office. (Def. SUMF, ECF No. 59 ¶ 36.) Duties included coordinating meetings for directors and conducting evaluations, neither of which Stiger performed under Chuck Blow's supervision. (Id. ¶¶ 41-44.) Stiger applied for the position, but did not receive it. (Id. ¶ 39.) On May 13, 2010, Stiger sent memoranda to Chuck Blow and Lorie Ingram-Glenn ("Ingram-Glenn"), who was the manager of the Human Resources department in the Assessor's office. (Id. ¶¶ 48, 51.) In her memoranda, Stiger requested a job study of her position as Administrative Technician. (Id. ¶¶

4

48, 53.) Stiger stated that many of her responsibilities were the same as those of an Administrative Aide, but conceded that she did not currently coordinate meetings for directors or conduct evaluations. (Id. ¶ 50.)

On June 14, 2010, Ingram-Glenn sent Stiger a memorandum explaining that Fox had performed a review of Stiger's duties in September 2008 and determined that she was working within her job classification. (Id. ¶ 54.) Ingram-Glenn explained that she had compared the duties from Stiger's PDQ with those of the Administrative Aide position and there were several differences. (Id.) On June 21, 2010, Stiger sent Ingram-Glenn an email about "the next grievance step," and Ingram-Glenn responded that the next level was "to file with an elected official." (Id. ¶ 54.5.) On June 24, 2010, Stiger sent Johnson a memorandum "requesting a detailed review of my current job description that is located in my personnel file, with the Administrative Aide position that was recently filled." (Id. ¶ 54.6.) In response, Johnson sent Stiger an email explaining that Ingram-Glenn's immediate supervisor and director were the next level to request a review and that Johnson was forwarding Stiger's request and attached documentation to them. (Id.)

On June 25, 2010, Johnson sent Johnson Saulsberry ("Saulsberry"), an administrator with the Assessor's office, an email asking him to review Stiger's request. (Id. ¶ 55.) On

5

June 28, 2010, Saulsberry sent Stiger a letter stating that Ingram-Glenn's findings were consistent with the recent study conducted by Fox and that Saulsberry had reviewed Stiger's request and had reached the same conclusion as Ingram-Glenn. (Id. ¶ 56.) In August 2010, Johnson decided against requesting that Shelby County's Compensation Division conduct a review of Stiger's job. (Id. ¶ 60.)

That decision was the first thing Johnson ever did that Stiger considered unfair. (Id. ¶ 60.) Stiger believes that she was retaliated against for her support of Giannini in the 2008 political race by not being "given due process like the ladies in personal property." (Id. ¶ 65.) According to Stiger, those women were given desk reviews by Shelby County's Compensation Division when they requested them, but Stiger's desk review was conducted by Ingram-Glenn. (Id. ¶ 66.) Stiger does not argue that Johnson improperly influenced Ingram-Glenn in conducting her review of Stiger's position. (Id. ¶ 61.) Johnson never said anything to Stiger that led her to believe that Johnson would retaliate against Stiger for campaigning for Giannini. (Stiger Dep., ECF No. 59-1 at 43.) Neither Johnson nor anyone else ever suspended Stiger without pay, demoted her, or transferred her to an unpleasant work location. (Def. SUMF ¶ 64.)

Michael Lewis, Shelby County's Human Resources Administrator since November 2007, has explained that under the Compensation Policy in effect from July 1, 2009 to June 30, 2011, Lewis was responsible for determining whether to request a job evaluation from the Compensation Division. (Id. ¶ 77.) Under the Shelby County Compensation Policy for 2009 to 2010, the "Procedure to Request a Job Evaluation" required that:

> A written request to the Human Resources Administrator from the Elected Office, Division Director or Chief Administrative Officer or their designee to evaluate the position for proper classification must be provided.

(Comp. Pol., ECF No. 59-3.) Since Lewis has been the HR Administrator, he has received no written request for a job evaluation, for Stiger or any other employee, that met the requirements set out in the Compensation Policy. (Def. SUMF ¶ 78.) No Shelby County policy in place during this period granted an employee the right to insist that a study be conducted of his or her position. (Id. ¶ 80.) Stiger's claim that Shelby County policies provide that "[e]mployees may also request a review of their position allocation if they submit their request through their department head" comes from a document dated October 1987. (ECF No. 69-16.)

Stiger retired on June 30, 2011. (Def. SUMF ¶ 21).

## II. Jurisdiction

7

This Court has federal question jurisdiction under 28 U.S.C. § 1331. Stiger brings this action under 42 U.S.C. § 1983, alleging violations of procedural due process under the Fourteenth Amendment and unlawful retaliation for engaging in protected speech under the First Amendment. (ECF No. 1-1 at 9.)

### III. Standard of Review

Under Federal Rule of Civil Procedure 56, the court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A defendant can meet this burden by pointing out to the court that the plaintiff, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the plaintiff must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the plaintiff. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The plaintiff must "'do more

8

than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The plaintiff may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, she "must adduce concrete evidence on which a reasonable juror could return a verdict in [her] favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The plaintiff has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

9

**IV. Analysis**

Defendants argue that Stiger cannot establish violations of the Fourteenth and First Amendments because Stiger had no property interest in a review of her job responsibilities by Shelby County's Compensation Division and because Johnson's failure to request a review does not constitute an adverse employment action. Stiger argues that a reasonable jury could conclude otherwise.

To state a § 1983 claim for violation of procedural due process, a plaintiff must show that she had a property right in the benefit she was denied. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). Property rights are not created by the Constitution, but by "existing rules or understandings that stem from an independent source such as state law." Id. at 539. For a plaintiff to have a property right in a benefit related to government employment, she:

> must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it.

Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). This Court has found that state law and Shelby County's compensation policies do not "create a property interest in a job study – much less a job study that must be conducted by the Compensation Division." Elion v.

Shelby County Government, No. 08-2411-P, 2012 WL 7110531, at *8 (W.D. Tenn. 2012).

No reasonable jury could conclude that Johnson violated Stiger's Fourteenth Amendment right to procedural due process by failing to request a job study by the Compensation Division. Stiger had no legitimate claim of entitlement to such a study. Shelby County's Compensation Policy specifies the opposite, stating that job evaluations must be requested by the elected official, the Chief Administrative Officer, or their designee. Even if the policy from 1987, stating that an employee may request a job evaluation, had been effective in 2010, it would not imply that Stiger was entitled to that evaluation. See Golden v. Town of Collierville, 167 F. App'x 474, 478 (6th Cir. 2006) ("[I]f an official has unconstrained discretion to deny the benefit, a prospective recipient . . . can establish no more than a 'unilateral expectation' of it.")

To state a § 1983 claim of First Amendment retaliation, a plaintiff must show that (1) she engaged in constitutionally protected speech or conduct, (2) the employer took an adverse employment action against her, and (3) there is a causal connection between elements one and two. Rorrer v. City of Stow, 743 F.3d 1025, 1047 (6th Cir. 2014). The parties do not dispute that Stiger's participation in the political campaign

11

against Johnson was constitutionally protected speech or conduct.

An adverse employment action:

> constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). "A mere inconvenience or an alteration of job responsibilities" is not enough to constitute an adverse employment action. Choulagh v. Holder, 538 F. App'x 432, 439 (6th Cir. 2013).

To establish a causal connection, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have taken place" had the plaintiff not engaged in the protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

> [W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008); see also Edmond v. State of Tenn. Dept. of Prob & Parole, 386 F. App'x 507, 514 (6th Cir. 2010) ("Generally, temporal proximity alone is not enough to establish a causal link."). See also Charles v. Baesler, 910 F.2d 1349, 1355-56 (6th Cir. 1990) ("[T]he Constitution

12

must not be trivialized by being dragged into every personnel dispute in state and local government.")

No reasonable jury could conclude that Johnson's failure to request a job study by the Compensation Division was an adverse employment action. Stiger was not demoted or stripped of job responsibilities, and there is no evidence a job study by the Compensation Division would have resulted in a significant change in Stiger's employment status for the better. Stiger admits that her job duties did not include multiple duties of an Administrative Aide. Ingram-Glenn found that Stiger was properly classified as an Administrative Technician, and Stiger admits that there is no evidence that Johnson negatively influenced that finding.

Even if Johnson's failure to request a job study by the Compensation Division constituted an adverse employment action, no reasonable jury could conclude that there was a causal connection between Johnson's decision and the protected activity or that Johnson's decision was retaliatory. Stiger's protected activity occurred in July 2008, and Johnson's decision not to request the job study occurred in August 2010, a lapse of more than two years. There is no other evidence of retaliatory conduct. Johnson never said anything to Stiger that suggested Johnson would retaliate against Stiger, and Stiger has adduced no evidence that retaliatory animus existed. See Belew, 205

F.3d at 895. Johnson's decision not to recommend the job study was not unusual. No job study by the Compensation Division had been requested since at least November 2007.

No reasonable jury could conclude that Defendants violated Stiger's Fourteenth and First Amendment rights.

**V. Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

So ordered this <u>27th</u> day of May, 2014.

s/ Samuel H. Mays, Jr.<br>
SAMUEL H. MAYS, JR.<br>
UNITED STATES DISTRICT JUDGE